Our next case for argument is 21-2174 Pop Top v. Rakuten. Counsel, how do I say your last name? Worzen. Mr. Worzen, please proceed. Good morning, Your Honors. Matt Worzen for Pop Top Corp. This court held in the O2 micro decision that a district court must resolve a dispute regarding the technical scope of a claim term. More so in the Markman case and the precedent after that case, this court has held many times that claim construction must precede an infringement analysis. That's the air that Pop Top has appealed to this court and that's the basis on which Pop Top requests a reversal. The parties presented to the district court a definite disagreement over the scope of the claim term code for invoking a highlighting service. Pop Top, citing the intrinsic record, argued in its opposition motion to summary judgment in a section entitled claim construction. Pop Top argued for a broad reading of that term, an encompassing code that leads to highlighting functionality. What does that mean? It means it invokes? What does it mean? What do you mean by leads to highlighting? Your Honor, if I could just address that question with respect to the claim language itself, which defines the code for invoking as a forward-looking process, and so the code is leads to the highlighting functionality, and I'm saying that with basis in the claim language itself. On page 25 of the appendix, column 8 of the 623 patent, it's a method claim. There's one claim in this patent. It's a method. In step 2 of the method, the claim language defines this code for invoking, and it's a  We have the claim. We're familiar. We've read it. So, okay, so what language? Are you relying on the wherein language? What language are you referring to? Yes, so on line 25, wherein the internet document includes code for invoking a highlighting service to operate with the internet document, skipping down then to line 30, code causing a user interface object for invoking the highlighting service to be displayed by the client web browser in connection with the internet document. So the accused device, they're asserting, and they have very extensive testimony they affect, that the internet document doesn't have any code for highlighting. Yes, that's correct. And so how do you respond to that? I mean, why does your claim construction matter? It matters, Your Honor, because the claim should be construed broadly based on the intrinsic record, based on this claim construction, this claim language supports that the code is not executable code that delivers highlighting functionality, and that is what the extrinsic evidence that Kobo presented goes to. They presented Kobo's reading of this claim in a narrow way, and they submitted extrinsic evidence that would limit and require this claim to serve the internet document with executable code with highlighting functionality. And if I can refer specifically to that extrinsic evidence that was submitted and adopted by the district court without construing the claim. Can I ask you, I remember also that your client had never asked, well not never asked, but didn't ask the court to construe any claim terms in this case, right? No, with all due respect, that's wrong. In the opposition brief to the motion for summary judgment, there is a section in the brief, and it's discussed throughout, claim construction. Page 641 and 642 of the appendix is the section entitled claim construction. Not only that, in the introduction, Poptop goes into detail and specifically argues for this broad reading of this claim term, as well as in 644 of the appendix. So it's incorrect. In fact, Poptop presented to the district court a broad construction of the term that Poptop submits is supported by the intrinsic record. Now, it's not, as far as claim construction being immaterial, as Cobo argues, it's not as if Cobo took that position in front of the district court. Instead, what happened is Cobo put in this extrinsic evidence, which is contradicted by the intrinsic evidence that Poptop went forward before the district court on. The district court ignored the claim construction issue, adopted extrinsic evidence that cannot be squared with the intrinsic record, and it's our submission that that's an error under O2 micro. Well, you're talking about whether the claim should be construed always when there's a dispute in the infringement issue. Yes, Your Honor. A particular term, even though that isn't focused in the summary judgment record. Under O2 micro, and we would submit more broadly Markman itself and its prodigy, an infringement analysis must be preceded by a claim construction. And so here we have a dispute over the scope of the claim term code for invoking. Poptop argued that it should have a broad reading and should reach any code that leads to the highlighting. Cobo, for its part, argued that the code must be executable code with highlighting functionality. I mean, Cobo seems to have presented a lot of evidence in terms of expert testimony. I mean, I guess some unrebutted declarations. We don't have any code regarding highlighting, including any code that invokes the highlighting. When your client identified a particular code file that it thought was the source of code that would meet this claim element, they even did tests to show that when they removed those, highlighting could still occur. I mean, what is your response to that? What is your evidence that this claim construction matters? Our evidence, Your Honor, is that the claim talks about a user interface object. The code for invoking- Do you have like particular documents you're referring to or expert testimony or anything that you're referring to for why it is that the accused device meets this limitation? Yes, Your Honor. So a voluntary claim chart as well as infringement contentions. Two different demonstrations with the accused application running on a device and a user interaction with the served e-book triggering the highlighting service. And so we would rely and we did rely in the district court on this user interface object, which the patent refers to as a highlight button. And that's exactly what the COBO accused device has. Moreover, to oppose the summary judgment, we relied on COBO's own evidence, which was submitted based on COBO's narrow reading of this patent claim.  It's POPTOP's submission that Mr. Hunter's testimony supports and is consistent with POPTOP's voluntary claim chart and infringement contentions. And so the short of it is that the COBO e-book is served with data that facilitates a command based on user interaction with the e-book. More specifically, with respect to Mr. Hunter's testimony, at appendix 177 and 78, the court will find testimony that the user interacts with the e-book, which sends a command to the content viewer. The code for invoking its own submission leads to the highlighting functionality. The highlighting functionality is not required to be in the served internet document. Then back to Mr. Hunter's testimony at appendix 179, paragraph 24, one of these commands that's based on user interaction with the served e-book is a highlight command. And so what we did rely on as evidence, and it's not just attorney argument, we have the claim chart and the infringement contentions, which contain public information, yes, but COBO's accused product and a user interacting with the served e-book, manipulating the e-book precisely as claimed in claim one. The third step of claim one, after the e-book has been served with the code for invoking the highlighting service, the claim reads, responsive to a user selecting the user interface object in the client web browser, the client web browser communicates a request, a command, to the highlighting service server to invoke the highlighting service. Step three of this method claim starts to get to the actual functionality of the highlighting service. The court will note that it's not, the functionality is not present in step two. It's our, it's POPTAP's argument that this claim should be given a broader reading. And yes, it's true that the broader reading would also capture the embodiment that COBO is arguing for. You could serve the internet document with executable code. POPTAP's point is that that is not required by this claim language. The point is that the district court, according to this court's precedent O2 micro, when confronted with a dispute such as this one that goes to the scope of this claim, it's improper and it's reversible error to skip claim construction. And on that basis, we're asking for reversal. So you're telling us the court should spontaneously do this in reviewing the motion for summary judgment, even though it's not spelled out in the detail that you're now presenting? Your Honor, I respectfully disagree. We did contest this. And I'll cite the appendix again. In our opposition brief, there's an entire section on claim construction. And that will be found at pages 641 and 642. This issue was presented in these same terms. POPTAP relied on the intrinsic record for a broad construction of code for invoking a highlighting service. And it was error. And we are asking for reversal. It's not a spontaneous obligation of the district court judge. It has to be squarely presented. The parties have to dispute the technical scope of the claim term. And our argument before your honors is that the dispute was squarely presented. Well, perhaps the problem the district court had was on 643, when you explain the claim construction dispute, you say, in sum, COBO has asked the court to add four requirements to claim one. First, the served internet document must include all code necessary to highlight the served internet document. And then perhaps the court was not of the belief there continued to be a dispute. Because in the reply brief that your opponent served at page 521, it completely says it agrees. It doesn't need to contain all the quote. I'm quoting from page 521. Doesn't need to contain all code necessary to highlight the internet document. But rather, COBO has shown that the e-books for the COBO Act do not contain any code at all that invokes the highlighting service. Perhaps that's why the district court didn't think there was a dispute. You frame the dispute as your problem was they were saying it had to have all the code. And they responded to the district court saying, we agree it doesn't have to have all the code. We don't dispute their claim construction argument at all. We don't have any code. Your honor, that was not Pop-Top's position. I read you from your brief. That's the page you told me to look at for your position. That's a reflection of the position that COBO took, which is that the highlighting functionality must be in the e-book that's served. And for that position, we would cite 287, the summary judgment brief. 184, Mr. Hunter's testimony. And 237, the technical expert's testimony. All those three sites reference the functionality needing to be served with the e-book. And that the e-book doesn't contain highlighting functionality. And so the passage from Pop-Top's brief that was just read by the court references COBO's position that then and there, all code must be necessary to highlight the document. Those are the terms that COBO was using in their summary judgment motion. But it points up the dispute that the parties had in Pop-Top's brief, including in the claim. Counselor, you've exceeded your time and all your rebuttal time. I'll restore some rebuttal time, but we need to move on. Mr. Raskin, Mr. Raskin, sorry, we need a plural issue. Good morning, your honors. May it please the court. I will jump straight to the claim construction issue. Because I believe your honors have hit the nail on the head. Never in, well, there's no dispute at all regarding the meaning of the code for invoking limitation. Never in this case, whether in our briefs to the district court, at the hearing before the district court, in our briefs before this court, have we ever taken a position that in order to infringe the claim, the alleged internet document, the COBO e-books, need to include all of the code relating to highlighting. We've never taken that position. The position that we've consistently taken is that however that term is construed, the COBO e-books contain no code at all. So no code for invoking or calling a function for highlighting. What about code for having a user interface where you can push a highlighting button or something like that? Yes, there's no code relating to that either. The evidence in the record, which is an extensive declaration from both Rakuten COBO's CTO, Mr. Hunter, and an expert, Dr. Nathaniel Polish, that evidence demonstrates that there's no code on the e-book whatsoever relating to highlighting at all. Relating to highlighting, including for invoking. Now with regard to these commands that counsel refers to, and today, counsel referred to paragraph 24 of Mr. Hunter's declaration, which is at appendix 179. The code that's referenced in paragraph 24 is code that is on the app, not on the e-book. So paragraph 24 says, the show highlight menu function sends the highlight highlight command to the content viewer. And then there is a reference to source code. But if you turn to appendix... Counselor, you're reading stuff that in my thing is marked confidential, I believe. Is that appropriate? I'm just wondering whose confidential information this is. Yeah, this is our confidential information. Okay, then you can read whatever you want. Then we can read it. And if you turn to paragraph 15 of Mr. Hunter's declaration, which is on appendix 175, and this is the paragraph that introduces the subsequent paragraphs that refer to code. He says that in each of the above cases, when a user selects text to be highlighted and activates the highlight button, the Kobo app, not the book, is programmed to highlight the selected text. As I explained below, with reference to the source code for the iOS version of the Kobo app, the Kobo app does this by executing functionality that is located in the Kobo app itself, which is stored on the user's local device. So when you get to paragraph 24, and there are references to certain code that leads to certain commands, that is code on the app, not on the e-book. Is there something... Oh, go ahead, please. I was going to ask how this theory helps your case. It helps the position that this clause didn't have to be construed, but it's a direct admission of infringement as that clause is applied. Well, that's PopTop's position, but... Well, is there a problem after you press this position? Oh, no, because the code that I'm referring to is on the app. So the claim requires that an internet document, which in this case is the e-book. So there's an e-book, and then there's the app on which the e-book runs. And according to the claim, the internet document, which PopTop alleges is the e-book, must include code for invoking highlighting. But the code that I just referenced is not on the e-book. The code that I referenced is on the app. And that's been our position all along, that all of the code that's relating to highlighting is stored on the device itself. There's nothing on the e-book that's delivered to the device. There's no code on the e-book that relates to highlighting. There's no code that invokes highlighting. There's no code regarding highlighting at all. And Judge Stoll... There has to be something. Doesn't there have to be something that invokes highlighting? How else would the highlighting occur? It doesn't occur a sua sponte, right? Well, there's extensive code, but it's on the device. The code is stored on the device so that a book can be purchased from either the COBO website, it can be purchased from several different places, but it's on the device. And the reason it's on the device is so users can, for example, use the book when they're on a beach. So they're able to highlight even when they're not hooked up to the internet. Exactly, Your Honor. And this goes to other limitations of the claim that we argued to the district court, on which the district court didn't rely in granting summary judgment. But there's many other reasons why we don't infringe here. For example, we do not have our highlighting service on a highlighting service server. It's on the device itself. It's on the app itself. And you can search through all of PopTop's briefs. And I was going to say evidence, but they don't have any evidence. Look through all of their briefs, and they do not once cite to a single line of code on the e-book. Not once. And that's because there is no code for invoking highlighting or code for highlighting, but they have not identified any code at all on the e-book. And for that reason alone, we believe summary judgment should be affirmed because without pointing to any code, let alone code for invoking highlighting, they can't raise a genuine issue of fact as to whether there is code for invoking highlighting on the e-book. Are there any other questions on this claim construction issue? If not, I'll just turn briefly to the commands issue. When we get to paragraph 24 of Mr. Hunter's declaration, first and foremost, the district court refused to consider that evidence because it was not in PopTop's infringement contentions. And I hate to have to rely on what, in my mind, seems like a technicality. But it was not in their infringement contentions. And the district judge, or sorry, magistrate judge Donna Ryu, when she considered that evidence and saw that it wasn't in the infringement contentions, she looked to see whether PopTop had made a showing of good cause for raising it in their brief for the first time. And actually, it was at the argument for the first time. It was not even in their briefs on summary judgment. She raised it for the first time at the hearing. And she found that because it was not in their infringement contentions, they couldn't rely on that. Now, that is an abuse of discretion standard. And we respectfully- This is with respect specifically to the argument about displaying highlighting control. Yes. And so we believe that they have not made any argument or showing that the district court abused its discretion in refusing to consider that. Now, for the first time- But if they did, you've got evidence that you've presented to us to show that this is unrebutted testimony, that this control is not on the e-book. Instead, it's on the app. Exactly, Judge Stahl. And that's why I hesitate to start with the infringement contentions argument because I don't want to minimize the fact that the commands, the so-called commands that they point to, are not even on the book itself. They're on the app. And that is, just for the record, in paragraphs 15, 20, and 23, and 24 of the Hunter Declaration, which are appendix pages 175, 177, and 179. And so for these reasons, Your Honor, I'll just- Your Honors, I'll just wrap up. We believe that the district court's grant of summary judgment should be affirmed for the simple and undisputed reason that there has been not a single line of source code cited by POPTOP throughout this entire case on the e-book, let alone code for invoking highlighting. And for that simple- And on the other hand, there's extensive evidence in the record that there is no code on the e-book relating to highlighting and that all such code is on the app. I'm not sure if there are any questions. Thank you. Counsel, you have some rebuttal time. I'm sorry. It's all right. Matt Worzen for POPTOP. I'd just like to make two points. The first one is definitional, and it points up the problem that we have and the error we're pointing out. And that is, what is the code? What defines code for invoking a highlighting service? That legal question has never been answered. And so we believe that that's a broad construction. And this goes to what Chief Judge Moore pointed out, and that is that commands don't just issue from a vacuum. The e-book is served- You said you had an obligation to point to what the code was for infringement purposes. So what is the code? What is the code that's in the internet document that you claim invokes the highlighting service? The code, Your Honor, in the infringement contentions is what leads to the- What is the code, the specific code? Tell me what it is. Where is it? Where can I find it? Where have you alleged it? In the public information, when the user interacts with the e-book, it triggers a display of the highlighting tools. That evidence is confirmed by the Hunter testimony. And we point to page 179 of the appendix. But that was just explained, and reading that in total, it's very clear that what that's referring to is not code that's on the e-book, but rather code that's on the app. So what else do you have besides A179? Well, 177 and 78, Mr. Hunter testifies that based on user interaction, that highlight command is issued. And so this goes to the point that- But even if it's the user interaction, it's with the e-book running on the app. But the e-book is served to the app with something that leads to the highlighting. And for code that- What is that? It's code that- No, I mean, where in the record will I see what you've identified that as? A combination of Mr. Hunter's testimony, paragraphs 20 and 21, user interaction, paragraph 24, issue that highlight command to the content viewer. That together is code for invoking the highlighting service. Thank you, Your Honors. Okay, thank you both, counsel. This case is taken under submission. We're gonna have a brief recess while you go set up the video argument.